STATE OF CONNECTICUT *v.* LUIS FELICIANO
(AC 23063)

Foti, Mihalakos and Hennessy, Js.

Argued October 29—officially released December 31, 2002

*Kirstin B. Coffin*, special public defender, for the appellant (defendant).

*Eileen F. McCarthy*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's

attorney, and *John F. Fahey*, assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Luis Feliciano, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a).[1] The defendant was sentenced to the custody of the commissioner of correction for a period of forty-five years, plus five years consecutive and nonsuspendable, pursuant to General Statutes § 53-202k,[2] for a total effective sentence of fifty years. On appeal, the defendant claims that the court improperly (1) denied his motion for a judgment of acquittal, (2) instructed the jury regarding consciousness of guilt, (3) instructed the jury regarding certain hearsay testimony and (4) imposed an enhanced sentence of five years incarceration pursuant to § 53-202k. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On November 2, 1998, the defendant, along with

---

[1] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[2] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

Alexander Figueroa, was selling drugs at the intersection of Park and Wadsworth Streets in Hartford. In the early hours of that morning, a friend of Figueroa, Edwin Soler, and Soler's girlfriend, Brenda Morales, drove to that location and picked up the defendant and Figueroa. The four then drove to a lot across from the Wadsworth greenhouses. At approximately 3:20 a.m., the victim, Karl Beverley, approached the car seeking to buy $20 worth of drugs. The four had no drugs to sell, but the defendant told his friends that he would take the victim's money anyway. The defendant exited the car, and a fight took place with some gunshots being fired. Beverley somehow managed to take the defendant's gun and run. As a result of the fight, the defendant suffered a huge blood clot on his hand from the hammer of his gun.

The defendant and his three acquaintances then drove to a location at Park and Wadsworth Streets, where the defendant obtained a revolver. They then proceeded to drive around looking for Beverley. When Beverley was seen, the defendant got out of the car with his weapon and shot the victim, causing him to fall to the ground. The defendant then walked to him and shot him again. He then returned to the car and stated: "I think I killed him."

After the shooting, the group drove the wrong way on West Street, and fled the city by way of Interstate 91 going south. They exited the interstate in Wethersfield and proceeded north on the Silas Deane Highway, eventually returning to Hartford by city streets.

The victim was found lying in a driveway of a parking lot on West Street. A baseball cap and a .22 caliber revolver were found near him on the ground. He was killed by two gunshots to the chest and abdomen fired from a .38 caliber revolver.

The following day, the defendant was heard bragging that he had "caught his first prior," which meant he

had committed his first killing. Further, the defendant was heard to say that if his friends talked, he would bring them down with him. Additional facts will be set forth as necessary.

I

The defendant alleges that the court improperly denied his motion for a judgment of acquittal because there was insufficient evidence to sustain the jury's verdict. The defendant claims in his principal brief that because "there was absolutely no physical evidence linking [him] to the offense" and because the "state's entire case consisted of questionable eyewitness testimony," the evidence was insufficient, particularly in light of the testimony from defense witnesses, who included the defendant. We do not agree.

Because the defendant elected to put on evidence following the denial of his motion for a judgment of acquittal, which he made after the close of the state's case-in-chief, our review of his sufficiency of the evidence claim must be conducted in light of all the evidence presented at trial. *State* v. *Rutan*, 194 Conn. 438, 440, 479 A.2d 1209 (1984); *State* v. *Wright*, 62 Conn. App. 743, 748–49, 774 A.2d 1015, cert. denied, 256 Conn. 919, 774 A.2d 142 (2001).

"The standards by which we review claims of insufficient evidence are well established. When reviewing a sufficiency of the evidence claim, our courts apply a two-prong[ed] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . .

The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . In doing so, we keep in mind that [w]e have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." (Citation omitted; internal quotation marks omitted.) *State* v. *Wright*, supra, 62 Conn. App. 749–50.

"We do not sit as a thirteenth juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . Rather, we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . *State* v. *Henning*, 220 Conn. 417, 420, 599 A.2d 1065 (1991). This court cannot substitute its own judgment for that of the jury if there is sufficient evidence

to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Tomasko*, 238 Conn. 253, 258, 681 A.2d 922 (1996).

The basis of the defendant's claim appears to be that the jury should have believed his witnesses and not those of the state. It is the jury's function, however, to weigh the evidence, pass on credibility and find facts; that responsibility belongs exclusively to the jurors "as the sole triers of fact and credibility . . . ." (Internal quotation marks omitted.) *State* v. *Provost*, 251 Conn. 252, 256, 741 A.2d 295 (1999), cert. denied, 531 U.S. 822, 121 S. Ct. 65, 148 L. Ed. 2d 30 (2000); *State* v. *Pratt*, 235 Conn. 595, 604, 669 A.2d 562 (1995).

We can discern no benefit from reciting in detail the evidence presented by the state and the testimony elicited. Suffice it to say that the issue presented to the jury was one of credibility. The state presented three eyewitnesses who testified that they saw the defendant shoot the victim. The defense presented evidence suggesting that those witnesses' accounts were either inconsistent or biased. Keeping in mind our deference to the jury's determination of credibility and viewing the evidence in the light most favorable to sustaining the verdict, we conclude that the evidence was sufficient for the jury reasonably to have found that the defendant was guilty beyond a reasonable doubt. Therefore, the court properly denied the defendant's motion for a judgment of acquittal.

II

The defendant next alleges that the court improperly instructed the jury on consciousness of guilt. The defendant makes two claims. Specifically, he first claims in his principal brief that the court should have instructed the jury "that innocent explanations may have existed" and that the jury should consider the defendant's explanations for the flight, for example that "Soler drove

away." That claim was preserved properly for our review. The defendant failed to preserve his second claim, which is that the court improperly instructed the jury on consciousness of guilt regarding statements he had made after the murder. Nevertheless, he claims that the charge merits review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[3]

As to that claim, the court instructed the jury as follows: "Now, in any criminal trial, it is permissible for the state to show that conduct or statements made by a defendant after the time of the alleged offense may fairly have been influenced by the criminal act. That is, the conduct or statements show a consciousness of guilt. The state alleges that certain acts of the defendant may constitute consciousness of guilt in this case. The state alleges that the defendant fled the scene immediately following the alleged crime. The state contends that this flight from the scene evidences consciousness of guilt.

"Additionally, the state alleges that certain statements made by the defendant regarding keeping Edwin Soler quiet about the events of November 2, 1998, also tend to show a consciousness of guilt on the part of the defendant. The alleged flight of the defendant from the scene and the defendant's alleged statements regarding Edwin Soler do not raise a presumption of guilt. It is entirely up to you as judges of the facts to decide whether conduct or statements of the defendant reflect consciousness of guilt or not and to consider

---

[3] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

such in your deliberations in conformity with these instructions."

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Citation omitted; internal quotation marks omitted.) *State* v. *Rodriguez*, 63 Conn. App. 529, 534, 777 A.2d 704, cert. denied, 256 Conn. 936, 776 A.2d 1151 (2001).

"A jury charge in which the court removes from the jury's consideration an issue that is one of the essential elements of the crime, and thereby relieves the state of the burden of proving every element beyond a reasonable doubt" is unconstitutional. (Internal quotation marks omitted.) *State* v. *Washington*, 28 Conn. App. 369, 373, 610 A.2d 1332, cert. denied, 223 Conn. 926, 614 A.2d 829 (1992); see *Sandstrom* v. *Montana*, 442 U.S. 510, 514–27, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). "A proper instruction on flight as consciousness of guilt, however, merely identifies a permissive inference that the jury might draw from the defendant's conduct." *State* v. *Washington*, supra, 373. Similarly, where the jury has been instructed on a defendant's statement as evidence of consciousness of guilt, our Supreme Court has stated that "[a]n instruction about consciousness

of guilt is not so directly related to an essential element of the crime as to warrant plenary discussion of whether the claim is of constitutional magnitude alleging [the] violation of a fundamental [right . . . .]" (Internal quotation marks omitted.) *State* v. *Tillman*, 220 Conn. 487, 504, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992).

Because no constitutional issue is raised, we review the entire charge to determine if it is correct in law and whether the court's instructions presented the case to the jury so that no injustice would result. See *State* v. *Roman*, 67 Conn. App. 194, 204–205, 786 A.2d 1147 (2001), cert. granted on other grounds, 259 Conn. 920, 791 A.2d 567 (2002).

"[F]light, when unexplained, tends to prove a consciousness of guilt. . . . Flight is a form of circumstantial evidence. Generally speaking, all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration. . . . The fact that the evidence might support an innocent explanation as well as an inference of a consciousness of guilt does not make an instruction on flight erroneous. . . . Moreover, [t]he court was not required to enumerate all the possible innocent explanations offered by the defendant." (Internal quotation marks omitted.) *State* v. *Figueroa*, 257 Conn. 192, 196–97, 777 A.2d 587 (2001), citing *State* v. *Freeney*, 228 Conn. 582, 593–94, 637 A.2d 1088 (1994).

Turning to the case before us, although the court could have referenced the defendant's "explanations" of flight, the court was not required to do so. See *State* v. *Hines*, 243 Conn. 796, 813, 709 A.2d 522 (1998). As previously stated, an improper flight instruction does

not raise a constitutional issue. We conclude that the court correctly instructed the jury in accordance with the law regarding the defendant's flight from the scene of the murder.

The defendant's second claim, that the court improperly instructed the jury as to certain statements he made after the murder, was not preserved and also is not of constitutional magnitude. We therefore cannot review the claim under *Golding* because it fails to satisfy *Golding*'s second prong. Our review of the entire charge leads us to conclude that it is correct in law and presented the case to the jury so that no injustice resulted.

### III

The defendant next claims that the court improperly instructed the jury regarding the restricted and permissible uses of certain hearsay testimony from a defense witness, Daniel Santiago, concerning what Soler allegedly had told Santiago when both men were incarcerated.

The facts relevant to the defendant's claim are as follows. Santiago testified on direct examination that Soler had told him, while both were incarcerated, that Soler, and not the defendant, had shot the victim. Following a sidebar conference with counsel, the court, without defense objection, gave a limiting instruction to the jury that it should consider that testimony not for the truth of who killed Beverley, but rather solely to impeach or to undermine Soler's credibility, as Soler also had testified that he never had told Santiago that he, Soler, had killed Beverley. The defendant also did not object to the court's renewing that instruction during the court's final charge to the jury. He now seeks *Golding* review of his unpreserved claim.[4]

_____
[4] See footnote 3.

The state claims that the record is inadequate for a full review of the defendant's claim. In its principal brief, the state posits that "[a]lthough the hearsay nature of Santiago's testimony was discussed on the record several times, the issue appears either to have been resolved in a sidebar [conference] between the court and counsel, resolved in the course of a chambers conference, was never ruled on or was waived by the defendant." We agree.

"It is the responsibility of the appellant to provide an adequate record for review . . . ." Practice Book § 60-5; Practice Book § 61-10. On the basis of our review of the record, we conclude that although the issue of Santiago's hearsay testimony had been discussed earlier in the trial proceedings, the record contains no ruling as to the admissibility of the testimony or any objection by the defendant on the matter, either during or after trial. If the parties discussed or resolved the issue during a sidebar conference, it was the duty of the defendant to ensure that this was preserved for the record. We conclude that the record is inadequate for review and, therefore, that the defendant's claim fails to satisfy the first prong of *Golding*.

Even if we were to conclude that the record is adequate, we recognize that the defendant's claim is an evidentiary one made under the guise of "instructional" error. The standard for an unpreserved claim involving an evidentiary ruling is well settled.

"This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . Our rules of practice make it clear that when an objection to evidence is made, a succinct statement of the grounds forming the basis for the objection must be made in such form as counsel desires it to be preserved and included in the record. . . . In objecting

to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of his objection, any appeal will be limited to the ground asserted. . . .

"These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Citations omitted; internal quotation marks omitted.) *State* v. *Bush*, 249 Conn. 423, 427–28, 735 A.2d 778 (1999).

"Regardless of how the defendant has framed the issue, he cannot clothe an ordinary evidentiary issue in constitutional garb to obtain appellate review. . . . Although this court will review an unpreserved constitutional claim if it satisfies the criteria of *State* v. *Golding*, [supra, 213 Conn. 239–40], unpreserved evidentiary claims are not afforded the same protection." (Citation omitted; internal quotation marks omitted.) *State* v. *McHolland*, 71 Conn. App. 99, 108, 800 A.2d 667 (2002).

In the present case, the defendant asks us to conclude that although Santiago's statement was hearsay, it was, nonetheless, sufficiently reliable and trustworthy such that the court should have allowed the jury to consider it for its truth, namely, that the defendant was not the shooter; therefore, the defendant claims, the court improperly limited the purpose for which the jury could consider the testimony. That clearly is an evidentiary issue that should have been raised at trial, not for the first time on appeal. As previously discussed, the record is silent as to the resolution of the hearsay issue. Because the defendant's claim is unpreserved and evi-

dentiary in nature, it does not present a claim of constitutional magnitude and, therefore, fails to satisfy the second prong of *Golding*.

## IV

The defendant claims finally that the court improperly enhanced his sentence by imposing a consecutive five year term of imprisonment pursuant to § 53-202k. Because his claim is unpreserved, the defendant seeks *Golding* review.[5] In his principal brief, the defendant claims that although "the trial court put the issue of whether the offense was committed with a firearm to the jury, [it] did not specifically put the issue of § 53-202k to the jury." The defendant argues that the "evidence that [he] utilized a firearm was neither overwhelming nor uncontested" and that "the murder weapon was not found, and the jury could only speculate that some type of 'firearm' was used . . . ."

Although the jury, under § 53-202k, is required to make the determination of whether a defendant used a firearm in the commission of a class A, B or C felony, the failure by the court to submit the issue to the jury is subject to a harmless error determination. *State* v. *Montgomery*, 254 Conn. 694, 736–38, 759 A.2d 995 (2002); see also *Neder* v. *United States*, 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). The *Montgomery* court explained that application of § 53-202k depends on factual findings concerning the two elements of that statute: (1) that the defendant committed a class A, B or C felony and (2) that the defendant committed such felony with the use of a firearm. *State* v. *Montgomery*, supra, 737–38. That court further explained that the jury in that case clearly had made a factual determination regarding the first element of the statute because it had convicted the defendant of the crime of murder, a class

---

[5] See footnote 3.

A felony. Id., 738. It further reasoned that the jury necessarily had resolved the factual determination underlying the second element in the state's favor because the state's case concerning the commission of the felony was closely linked to the defendant's use of a firearm. Id. The state in *Montgomery* had alleged that the defendant committed the murder with the use of a firearm, and the trial court expressly referenced that allegation in its charge to the jury. Id., 737.

Applying the standard set forth in *Montgomery* to the present case, we conclude that the court's failure to submit the issue of the applicability of § 53-202k to the jury and its imposition of an enhanced sentence under the statute was harmless error. The jury convicted the defendant of murder, a class A felony. As in *Montgomery*, the information expressly alleged that the defendant had committed murder with the use of a firearm. The jury, therefore, necessarily had to have found that the defendant committed the murder with that firearm. Further, in instructing the jury on the elements of murder, the court stated that to find the defendant guilty, the jury had to find that he had caused the death of the victim by means of the discharge of a firearm. The defendant never contested that the crime was carried out with the use of a firearm; he merely denied that he was the shooter. Our review of the record and briefs shows that the evidence of the use of a firearm to kill the victim was uncontroverted and supported by overwhelming evidence.

Those reasons lead us to the inescapable conclusion that by finding that the defendant had committed the murder with which he was charged, the jury necessarily found that he had committed that crime with the use of a firearm. Accordingly, we find that although the court should have put the issue of § 53-202k to the jury,

the error was harmless. The defendant's claim therefore fails under the fourth prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.