STATE OF CONNECTICUT *v.* RICHARD KOSLIK
(AC 23570)

Foti, Dranginis and West, Js.

Argued October 27, 2003—officially released January 6, 2004

*Joaquina Borges King*, special public defender, for the appellant (defendant).

*Eliot D. Prescott*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Richard Koslik, appeals from the judgment of conviction, rendered after a jury trial, of representing himself falsely as or impersonating a registered home improvement contractor in violation of General Statutes § 20-427 (b) (3) and offering to make

home improvements without having a certificate of registration in violation of General Statutes § 20-427 (b) (5). On appeal, the defendant claims that (1) the evidence was insufficient to support his conviction, (2) the trial court improperly omitted necessary instructions from its charge to the jury, thereby depriving him of his due process rights, and (3) the court failed to act, sua sponte, to strike certain testimony and to deliver a limiting instruction to the jury with regard to certain evidence. We affirm the judgment of the trial court.

The facts underlying the conviction, as the jury reasonably could have found them, are as follows. The defendant was a registered home improvement contractor prior to August 26, 1998. On August 26, 1998, the department of consumer protection (department) suspended the defendant's registration. In 1998, Christine Burns contacted the defendant to discuss his remodeling the kitchen and the bathroom in her single-family home. Burns did not hire the defendant to undertake the job until February, 2001. In the period leading to his being hired for the job, the defendant spoke with Burns and, less frequently, with her husband, Eric Burns, about the project and its cost. During those conversations, the defendant falsely represented himself as or impersonated a registered home improvement contractor and offered to make home improvements to the Burns' home without having a current certificate of registration enabling him lawfully to do so.

Upon signing a written agreement with the defendant on February 8, 2001, Christine Burns paid the defendant an initial deposit of $8500. On or about March 26, 2001, the defendant, along with two other individuals, performed demolition work in the Burns' kitchen. The defendant and others thereafter performed more work at the home. By April 1, 2001, Christine Burns had paid the defendant in excess of $14,000. The defendant worked intermittently on the project during April and

May, 2001, and Christine Burns repeatedly expressed to the defendant her displeasure with the pace of his performance. During May, 2001, the defendant stopped working on the project altogether.

Christine Burns spoke with the defendant via telephone. The defendant informed her that he needed more money and that she had lost her "time slot" in which he could complete her project. The defendant installed the cabinets in the kitchen, but left other aspects of the project, such as the installation of flooring and lighting in the kitchen, unfinished. The defendant also failed to perform any renovation in the bathroom that he had agreed to perform. Christine Burns obtained estimates from other contractors regarding the cost of completing the renovation. Those estimates ranged from between $13,000 and $15,000.

Frustrated by her failed attempts to get the defendant to return to her home to complete the remodeling project, Christine Burns filed a complaint with the department, and a department investigator looked into her complaint. The defendant's arrest followed. After the jury returned its guilty verdict, the court sentenced the defendant to a total effective term of one year imprisonment, suspended after 180 days, with three years of probation.[1] This appeal followed.

I

The defendant first claims that the evidence did not support his conviction of either charge.[2] We disagree.

[1] As a special condition of the defendant's probation, the court ordered him to pay restitution to Christine Burns and Eric Burns in the amount of $9434.

[2] In his principal brief, the defendant states his claim as one challenging the court's denial of his motion for a judgment of acquittal. The defendant sought a judgment of acquittal at the close of the state's case-in-chief. See Practice Book § 42-40. The court denied the motion, and the defendant elected to put on evidence following that ruling. That being the case, we shall conduct our review of the defendant's sufficiency claim in light of all of the evidence presented at trial. See State v. Feliciano, 74 Conn. App. 391, 395, 812 A.2d 141 (2002), cert. denied, 262 Conn. 952, 817 A.2d 110 (2003).

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . In conducting this review, the probative force of the evidence is not diminished where the evidence, in whole or in part, is circumstantial rather than direct." (Internal quotation marks omitted.) *State* v. *Holmes*, 75 Conn. App. 721, 739–40, 817 A.2d 689, cert. denied, 264 Conn. 903, 823 A.2d 1222 (2003).

We shall first set forth some of the evidence that is relevant to the defendant's conviction of the charges. We will then define the elements that are integral to each of the crimes of which the defendant stands convicted and determine if the jury reasonably could have found that the state met its burden of proving each element beyond a reasonable doubt.

A

The Evidence

Christine Burns testified that she contacted the defendant in 1998 after she saw signs with his advertisement on them in her neighborhood. She told the defendant that she wanted to "redo" the kitchen and the bathroom in her single-family home. She testified that after she called the defendant and inquired about the remodeling work that she wanted him to perform, she and the defendant kept in contact. Specifically, she testified

that in 2000 or in early 2001, the defendant visited her at her home to discuss the remodeling that she wanted him to do. She testified that the defendant showed her "a book of all the work that he had [done and] of all the work that he could do, a display of what he did showing the work that he was doing." She testified that there was an envelope in the back of this book in which "was a registration of some kind." She further testified as to the conversation that she had with the defendant after she viewed that document: "I said, 'Are you legitimate? Are you sure?' [The defendant] says, 'Are you crazy? Do you think I want to go to jail?' He goes, 'Sure.' He goes, 'If you don't believe me, I'll give you some references.'" She testified that the defendant "reassured" her and invited her to go to a home show to see examples of his handiwork on display.

The following exchange occurred between the prosecutor and Christine Burns:

"Q. Okay. Let me take a step back. So, when you referenced the card you were discussing in his book—

"A. In his book. In his display book.

"Q. Right.

"A. He had this one card with his license or registration in the book, in the back of the book.

"Q. Okay. So, did he direct you to that registration indicating that he was a registered home improvement contractor?

"A. Yes, because I asked him, 'Are you legitimate?' because I needed to know because you just can't take anybody.

"Q. Right. And do you recall the registration number on the card that was in the back of the book that he showed you?

"A. I don't remember, but he told me to call. He even said that I could check. He'd give me names of references and people that he did work for."

Christine Burns also testified that on February 8, 2001, she and the defendant entered into a written contract entitled a "retail sales contract." The contract, marked as a full exhibit at trial, listed various materials as well as detailed specifications for many of those materials, which Christine Burns agreed to purchase from the defendant. Those materials included custom cabinets, tile, skylights, flooring materials, a vanity, a toilet, a bathtub, shower walls, faucets and plumbing supplies, vinyl floorings, Sheetrock, a kitchen sink and various lighting fixtures. The contract contained the notation "no installation."

Christine Burns testified about the circumstances under which the defendant drafted the contract: "[W]hat [the defendant] did was, as he was writing, he said to me, 'I'm going to—this is the things that we're going to do. Now, let's write it together. I'm going to write down the things that I'm going to do in your home.' So, we sat there together, and he said he was going to do it. This thing on [the contract] where it says no installation, if that was there, he did not present that to me. He must have did that after upon my signing because this—how could he say no installation when he sat here with me and we went over the things that he was going to do because I had to tell him what I wanted done. Who was going to do it?"

The prosecutor asked Christine Burns if the defendant had discussed with her the need to "arrange for installation" of the items listed on the contract. She replied: "No, [the defendant] didn't say that. He said that these are the things that he was going to do himself." Christine Burns also testified that she observed the defendant, along with other individuals that she had

neither hired nor paid directly, perform installation work at her home. Specifically, she recalled observing the defendant installing ceiling lights and cabinets in her kitchen.[3]

Eric Burns testified that he, too, conversed with the defendant before his wife had hired the defendant. Eric Burns unambiguously testified that the defendant represented that he himself was going to do all of the installation at the Burns' home. Eric Burns also testified that he observed the defendant perform initial demolition work, complete "the majority of the installation on the cabinets" and perform the wiring work for some of the light fixtures. Eric Burns further recalled that he observed other individuals, whom he had neither hired nor paid directly, work with the defendant on the project.

Finally, the defendant testified that in August, 1998, the department suspended his registration as a home improvement contractor. He also testified that when he first met Christine Burns in 1998, when he was still a registered home improvement contractor, he gave her his business card, which was inscribed with his home improvement registration number.[4] The defendant further recalled subsequently showing Christine Burns his "display book" at some point in time, and testified that this book contained photographs and information concerning his "custom work." The defendant testified that

---

[3] The jury also had before it other evidence that the defendant performed installation work at the Burns' home. For example, the defendant admitted that he had installed a faucet. The state also introduced two handwritten notes given by the defendant to Christine Burns. The first note stated, inter alia, "Chris If you buy a faucet 4 hole I'll put it in Sat. and hook up dishwasher." The second note stated, inter alia, "Chris: Be back Thursday will start on floor # PR 3140 Colonial Cherry Inlay. *Please put up shower curtain.*"

[4] There was no evidence that once the department suspended the defendant's registration, the defendant informed Christine Burns to disregard that representation on his business card.

Christine Burns did not ask him if he was a registered home improvement contractor and that he did not "recall for a fact" if he removed his home improvement contractor registration certificate from his display book immediately after the department suspended his registration in August, 1998. The defendant testified that "maybe" he carried his home improvement registration certificate in that book in 1998, but testified that as of the time of trial, he no longer displayed that document in his display book.

## B

### Violation of § 20-427 (b) (3)

To obtain a conviction under § 20-427 (b) (3),[5] the state bore the burden of proving beyond a reasonable doubt the following elements: (1) that the defendant represented himself as or impersonated a registered home improvement[6] contrac-

[5] General Statutes § 20-427 (b) provides in relevant part: "No person shall . . . (3) represent himself falsely as, or impersonate, a registered home improvement contractor . . . ."

The state did not charge the defendant with having violated that part of § 20-427 (b) (3) that makes it illegal to falsely represent oneself as a registered home improvement salesman.

[6] General Statutes § 20-419 (4) provides: " 'Home improvement' includes, but is not limited to, the repair, replacement, remodeling, alteration, conversion, modernization, improvement, rehabilitation or sandblasting of, or addition to any land or building or that portion thereof which is used or designed to be used as a private residence, dwelling place or residential rental property, or the construction, replacement, installation or improvement of driveways, swimming pools, porches, garages, roofs, siding, insulation, solar energy systems, flooring, patios, landscaping, fences, doors and windows and waterproofing in connection with such land or building or that portion thereof which is used or designed to be used as a private residence, dwelling place or residential rental property, in which the total cash price for all work agreed upon between the contractor and owner exceeds two hundred dollars. 'Home improvement' does not include: (A) The construction of a new home; (B) the sale of goods by a seller who neither arranges to perform nor performs, directly or indirectly, any work or labor in connection with the installation or application of the goods or materials; (C) the sale of goods or services furnished for commercial or business use or for resale, provided commercial or business use does not include use as residential

tor[7] and (2) that such representation or impersonation was false.

The defendant claims that the evidence was insufficient to sustain the conviction because there was no evidence that he falsely "represented or stated to [Christine Burns] that he was a registered home improvement contractor." The defendant cites the written contract, which contains the notation "no installation," as evidence that he did not represent himself as a home improvement contractor, but merely a salesman of the materials listed on the contract. The defendant testified at trial that he neither offered to perform nor performed any installation work at the Burns' home.

The jury heard the Burnses testify concerning their conversations with the defendant and that the substance of those conversations pertained to his offer to supply *and* to install the materials they wanted to purchase for their home remodeling projects. In the context of those representations by the defendant, the jury also heard Christine Burns recount a conversation that she had with him just before she agreed to hire him. According to Christine Burns, the defendant showed her his "display book," which, the jury reasonably could have found, contained his suspended home improvement contractor registration document. Christine Burns testified that she examined the book and specifically asked the defendant if he was "legitimate."

rental property; (D) the sale of appliances, such as stoves, refrigerators, freezers, room air conditioners and others which are designed for and are easily removable from the premises without material alteration thereof; and (E) any work performed without compensation by the owner on his own private residence or residential rental property."

[7] General Statutes § 20-419 (3) provides: " 'Contractor' means any person who owns and operates a home improvement business or who undertakes, offers to undertake or agrees to perform any home improvement. 'Contractor' does not include a person for whom the total cash price of all of his home improvement contracts with all of his customers does not exceed one thousand dollars during any period of twelve consecutive months."

To that inquiry, the defendant responded that he was legitimate and directed her to look into the matter or to check his "references."

The jury is entitled to draw reasonable inferences from the evidence before it and, in performing its function, the jury brings to bear its common sense and experience of the affairs of life. *State* v. *Morgan*, 70 Conn. App. 255, 283, 797 A.2d 616, cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002). Given the context of the conversation and the defendant's actions in presenting Christine Burns with a book that contained a registration document that no longer was current, and in affirmatively representing his "legitimacy" in terms of the work that he offered to perform for her, we conclude that the jury reasonably could have found that the defendant falsely represented or impersonated a registered home improvement contractor.

Furthermore, the jury reasonably could have found that the evidence concerning the defendant's work on the project after he signed the contract with Christine Burns supported its finding that he falsely had represented himself as or impersonated a registered home improvement contractor. Several witnesses testified that they observed the defendant performing installation work at the home and not merely delivering materials to the job site.

The defendant argues that there was no evidence that he "represented or stated . . . that he was a registered home improvement contractor." The defendant also posits that "[i]f Mrs. Burns viewed the defendant's registration, anytime after August, 1998, she would have seen that the registration had expired, as this information is clearly identified on a registration certificate or she would have learned that it was suspended, if she checked with the state." Those arguments are not persuasive. First, § 20-427 (b) (3) does not require the state

to prove that the defendant actually stated that he was a registered home improvement contractor. The evidence was sufficient to support the conviction because the jury could have found beyond a reasonable doubt that the defendant falsely represented that he was registered or that he impersonated a registered home improvement contractor. Second, the defendant's claim that Christine Burns could have learned that the registration document that he presented to her was not valid is irrelevant to our analysis. Such an occurrence would have no bearing on the criminal act that the defendant already had committed.

C

Violation of § 20-427 (b) (5)

To obtain a conviction under § 20-427 (b) (5),[8] the state bore the burden of proving beyond a reasonable doubt the following elements: (1) that the defendant offered to make any home improvement and (2) that, at such time, the defendant did not have a current certificate of registration. The evidence before the jury and the reasonable inferences that the jury could have drawn from such evidence leads us to conclude that the state proved those elements beyond a reasonable doubt.

The defendant argues that the state failed to prove that he offered to perform any home improvements. In support of his claim, the defendant correctly points out that the written agreement between the parties, which was entitled "RETAIL SALES CONTRACT," described the materials that the defendant agreed to deliver, specified a "delivery" date and contained the notation "no

[8] General Statutes § 20-427 (b) provides in relevant part: "No person shall . . . (5) offer to make or make any home improvement without having a current certificate of registration under this chapter . . . ."

The state did not charge the defendant with having violated that part of § 20-427 (b) (5) that makes it illegal for an individual *to make any home improvement* when he lacks a current certificate of registration.

installation." The defendant implicitly argues that this written contract, which contained no mention of labor, costs of labor or the date on which installation would begin or be completed, precluded the jury from finding that he had offered to perform any home improvement work. The defendant testified that he was a mere supplier of materials and that he neither offered to install such materials nor installed such materials.

On the basis of the cumulative effect of the evidence, the jury reasonably could have found beyond a reasonable doubt that the defendant had offered to make home improvements. The jury could have inferred, from the evidence of the conversations between the defendant and Christine Burns prior to the time at which she hired him, that the defendant, by expressing his readiness and willingness to perform the installation work if she agreed to hire him, offered to perform the installation work that she required.

The defendant's heavy reliance on his written sales contract with Christine Burns is misplaced. The defendant makes much of the notation "no installation" on the contract. This action did not sound in breach of contract. In this criminal prosecution, the contract merely was some evidence relied on by the defendant in support of his assertions that he had not offered to make home improvements. The jury was bound to review the contract in light of all of the other evidence and testimony. Consequently, the jury reasonably could have rejected the defendant's testimony and the notation on the contract. It also reasonably could have found, as Christine Burns testified, that the notation "no installation" on the contract appeared after she signed the contract. In the alternative, the jury reasonably could have found, as questioning during the defendant's cross-examination suggested, that such a notation was purely disingenuous. The issue of what the defendant offered to do was, essentially, a credibility

contest between the Burns and the defendant. "It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Vassell*, 79 Conn. App. 843, 846, 832 A.2d 99 (2003). Here, the jury clearly discredited the defendant's evidence concerning what he had offered to do at the Burns' home. On the basis of the evidence presented and the reasonable inferences that the jury could have drawn from such evidence, the jury reasonably could have found that the state proved the necessary elements of the crime beyond a reasonable doubt.[9]

## II

The defendant next claims that the court improperly omitted necessary instructions from its charge, thereby depriving him of his due process rights. We disagree.

[9] The defendant also claims that there was no evidence (1) that he offered to perform home improvement work that had a cash price exceeding $200 so as to satisfy the definition of "home improvement" in General Statutes § 20-419 (4); see footnote 6. We disagree. The jury reasonably could have found, as the Burnses testified, that for $17,000, the defendant agreed to purchase and to deliver the building materials that they wanted for their home and that he would install such materials. Although the defendant correctly points out that the written contract did not allocate that dollar amount in terms of materials and labor, the jury, applying its common sense and considering the scope of the work that he agreed to perform, reasonably could have found that he had offered to perform work having a total cash price exceeding $200.

The defendant also claims that there was no evidence that the total cash price of all of his home improvement contracts with all of his customers exceeded $1000 during any period of twelve consecutive months so as to satisfy the definition of "contractor" in General Statutes § 20-419 (3); see footnote 7. The state did not bear the burden of proving that the defendant was a contractor; the state bore the burden of proving that the defendant improperly had represented himself as or impersonated a registered home improvement contractor and that he offered to make home improvements. Even were that not the case, on the basis of the agreement between the defendant and Christine Burns alone, the jury could have found that he had offered and agreed to perform a home improvement, and that the total cash price of his contracts exceeded $1000 during any period of twelve consecutive months.

The record reflects that the court did not define "home improvement contract," as provided in General Statutes § 20-419 (5), in its instructions with regard to either count. Further, the court inadvertently omitted a word from the statutory definition of "contractor" in its instructions with regard to each count. The defendant claims that those omissions "undermined [his] defense that the agreement was not subject to the Home Improvement Act [General Statutes § 20-418 et seq.]" and that the court did not provide the jury "with the legal authority and context for finding [him] not guilty as charged."

The record reflects, and the defendant acknowledges, that he did not object at trial to those claimed errors in the court's charge. Further, the record reflects that the defendant did not submit a written request that the court define either "home improvement contract" or "contractor" in its charge. Those failures render the defendant's claims of instructional error unpreserved. See, e.g., *State* v. *Ortiz*, 79 Conn. App. 667, 672–73, 830 A.2d 802, cert. denied, 266 Conn. 933, 837 A.2d 806 (2003). Nevertheless, the defendant argues that those claimed instructional errors violated his due process rights, that they are reviewable under *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), and that they "amounted to 'plain error.'"

We will treat the defendant's claim for review under *Evans* as a request for review under the standard set forth in *Evans* and reformulated in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We will review the claim under *Golding* because the record is adequate for review and the claim is of constitutional magnitude. See *State* v. *L'Minggio*, 71 Conn. App. 656, 671, 803 A.2d 408 (improper jury instruction as to essential element of crime charged may violate due process right to fair trial), cert. denied, 262 Conn. 902, 810 A.2d 270 (2002).

In reviewing an unpreserved claim of instructional error, we consider whether the substance of the charge as a whole misled the jury. The challenged instruction "is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present." (Internal quotation marks omitted.) *State* v. *Ingram*, 73 Conn. App. 246, 251, 807 A.2d 1023 (2002).

We first consider whether the court's omission of the word "improvement" in its definition of "contractor" possibly misled the jury. We have reviewed the court's instruction with regard to the charge of offering to make home improvements without being a registered home improvement contractor in violation of § 20-427 (b) (5). As part of that instruction, the court read from § 20-427 (b) (5) and then defined the elements of the offense. In so doing, the court defined "home improvement" by reading the relevant statutory language of § 20-419 (4). Immediately thereafter, the court defined the term "contractor."[10] We also have reviewed the court's instruction

---

[10] The court stated: "The law defines home improvement as follows: Home improvement includes but is not limited to the repair, replacement, remodeling, alteration, conversion, modernization, improvement, rehabilitation, or sandblasting of or addition to any land or building or that portion thereof which is used or designed to be used as a private residence, dwelling place, or residential rental property or the construction, replacement, installation or improvement of driveways, swimming pools, porches, garages, roofs, siding, insulation, solar energy systems, flooring, patios, landscaping, fences, doors and windows and waterproofing in connection with such land or building or that portion thereof which is used or designed to be used as a private residence, dwelling place or residential property in which the total cash for all work agreed upon between the contractor and owner exceeds $200.

"Home improvement does not include; A, the construction of a new home; B, the sale of goods by a seller who neither arranges to perform nor performs directly or indirectly any work or labor in connection with the installation or application of the goods or materials.

"The law defines contractor as follows: Contractor means any person who owns and operates a home improvement business or who undertakes, offers to undertake, or agrees to perform any home improvement. The term

with regard to the charge of representing oneself falsely as or impersonating a registered home improvement contractor in violation of § 20-427 (b) (3). The court read the relevant statutory language and set forth the elements of the offense. As part of its instruction, the court stated: "Again, the law defines home improvement as I have already defined it for you. And also the law defines contractor; again, I have defined it previously . . . ."

In defining "contractor," the court used the term "home contracts;" see footnote 10; rather than correctly stating "home improvement contracts." General Statutes § 20-419 (3) provides in relevant part: " 'Contractor' does not include a person for whom the total cash price of all of his home *improvement* contracts with all of his customers does not exceed one thousand dollars during any period of twelve consecutive months." (Emphasis added.)

Having reviewed the court's instructions as to each count in their entirety, rather than in artificial isolation, we conclude that the court's misstatement was harmless. The issues before the jury concerned whether the defendant was a registered *home improvement* contractor, whether he had offered to make *home improvements* and whether he falsely had represented himself as or impersonated a registered *home improvement* contractor. The only type of contract in evidence and at issue during the trial was the defendant's contract for *home improvement* with Christine Burns. "In reviewing a claim of error in a jury charge, [w]e must examine the issue or issues before the jury . . . and examine the charge in view of the factual posture of the case." (Internal quotation marks omitted.) *State* v.

contractor does not include a person for whom the total cash price of all of his home contracts with all of his customers does not exceed $1000 during any period of twelve consecutive months."

*Alston*, 5 Conn. App. 571, 578, 501 A.2d 764 (1985), cert. denied, 198 Conn. 804, 503 A.2d 1186 (1986). Under those circumstances, we conclude that it is not reasonably possible that the jury was misled into believing that the court's instruction pertained to anything other than a home improvement contract.

In regard to his second claim of instructional error, the defendant challenges the court's charge in that it did not define the term "home improvement contract," as defined in § 20-419 (5).[11] We conclude that the court's omission of that definition from its charge was inconsequential. The existence of a "home improvement contract" was relevant only to the issue of whether, under § 20-427 (b) (3), the defendant falsely represented himself as or impersonated a registered home improvement contractor. The statutory definition of "contractor" provides in relevant part: " 'Contractor' does not include a person for whom the total cash price of all of his home improvement contracts with all of his customers does not exceed one thousand dollars during any period of twelve consecutive months." General Statutes § 20-419 (3).

The existence of a home improvement contract was not an essential element of either of the crimes with which the defendant stood charged. The defendant's criminal acts were proven by evidence of what he offered to do and in what manner he represented himself. The evidence of a contract for home improvement between the defendant and Christine Burns was relevant, along with other evidence, to the issue of whether he committed those criminal acts, but it did not form the basis of his conviction.[12]

---

[11] General Statutes § 20-419 (5) provides: " 'Home improvement contract' means an agreement between a contractor and an owner for the performance of a home improvement."

[12] Furthermore, even were we to conclude otherwise, we would conclude that the court's charge adequately guided the jury to a proper verdict. In its instructions, the court defined "home improvement," "contractor," "owner" and "private residence." Given the facts of this case and the issues

The court's charge guided the jury to a proper verdict. Neither claimed error detracted from the court's proper recitations of and instructions concerning the elements of each offense.[13]

## III

The defendant finally claims that the court's failure to act, sua sponte, to strike certain testimony and to deliver a limiting instruction with regard to certain evidence constituted plain error. We disagree.

The record reflects that during its case-in-chief, the state called Pamela Brown to testify. Brown testified that she was employed by the department as a special investigator and that she had worked in the department's home improvement unit, where she investigated both civil and criminal violations of the Home Improvement Act and, specifically, Christine Burns' complaint against the defendant. During the state's questioning of Brown, the following colloquy, in relevant part, occurred:

"Q. Okay. And do you know the defendant . . . ?

"A. Yes, I do.

"Q. How do you know him?

"A. Since 1999, I've investigated other criminal and civil cases involving [the defendant] and his business, Ready Company."

Shortly thereafter, during cross-examination, defense counsel presented Brown with an exhibit containing various documents and exhibits she compiled during

---

actually before the jury, it strains credulity to posit that the jury could have interpreted "home improvement contract" in any other way than to refer to an agreement between the defendant, as contractor, and Christine Burns, as owner, for the performance of a home improvement.

[13] Having concluded as we do, we likewise reject any claim that the court's instruction constituted plain error.

her investigation, as well as a copy of her report. Defense counsel questioned Brown about the course of her investigation. Although defense counsel did not question Brown about it, Brown's report contained a paragraph entitled "Executive Summary," which included the following sentence: "Richard Koslik d/b/a Ready Company appears to be in violation of probation resultant from other home improvement criminal cases."

The defendant claims that the aforementioned testimony of Brown, as well as that sentence from her report, "tainted [the jury] with the impression that [he] had similar prior violations of the Home Improvement Act" and that its admission deprived him of a fair trial. The defendant concedes that he did not object to either Brown's challenged testimony or to the admission of the report. To the contrary, defense counsel introduced Brown's report into evidence. The defendant now claims that the court, sua sponte, should have stricken Brown's challenged testimony and delivered a limiting instruction to the jury concerning her report, and that its failure to take either step constituted plain error.

"To prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and the public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Hooks*, 80 Conn. App. 75, 86, 832 A.2d 690, cert. denied, 267 Conn. 908, 840 A.2d 1171 (2003); see also Practice Book § 60-5.

Here, the claimed error is not obvious. The defendant has failed to cite any authority in support of his proposition that the court had a duty to strike Brown's testimony or to deliver a limiting instruction with regard to

the exhibit. Given the circumstances of this case, we conclude that the court was under no duty, sua sponte, to act. See, e.g., *State* v. *Cator*, 256 Conn. 785, 801–802, 781 A.2d 285 (2001).

Apart from failing to demonstrate that the court should have acted as he suggests, the defendant also has failed to demonstrate that any error "more likely than not" affected the verdict. See *State* v. *Day*, 233 Conn. 813, 852, 661 A.2d 539 (1995). Brown's challenged testimony referred to her "investigation" of the defendant in prior civil and criminal cases. The challenged sentence from Brown's report referred to the defendant's apparent probationary status "from other home improvement criminal cases." The defendant apparently posits that the admission of that evidence did not accord with the standard for admissibility applicable to prior convictions or to prior uncharged misconduct. See *State* v. *Morgan*, supra, 70 Conn. App. 271–73. Brown's isolated and vague references did not specify whether the defendant had been convicted of a crime, what crime or crimes he had been convicted of or even when those acts occurred. Additionally, that evidence stands amid the testimony of the defendant and Brown that in August, 1998, the department suspended his registration. Applying common sense to that undisputed evidence, the jury would have inferred that the defendant's suspension resulted from some type of inappropriate behavior on his part, thereby lessening the marginal, if any, impact of that evidence on the jury.[14] For all of the foregoing reasons, we conclude that the defendant's claim does not implicate the plain error doctrine.

---

[14] Further, insofar as the defendant introduced Brown's report into evidence, we are mindful that "[a]n appellant . . . should not be allowed to claim as error that which his own action has induced." (Internal quotation marks omitted.) *Scott* v. *Barrett*, 212 Conn. 217, 222, 561 A.2d 941 (1989).

The judgment is affirmed.

In this opinion the other judges concurred.