STATE OF CONNECTICUT *v.* JOHN GLASPER
(AC 23214)

Bishop, McLachlan and Mihalakos, Js.

Argued October 23, 2003—officially released February 3, 2004

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Herbert E. Carlson, Jr.*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, John Glasper, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3) and (4),[1] burglary

---

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver . . . or other firearm . . . ."

in the first degree in violation of General Statutes § 53a-101 (a) (2)[2] and burglary in the second degree in violation of General Statutes (Rev. to 1999) § 53a-102 (a).[3] The defendant claims that (1) as there was insufficient evidence in the record to support his conviction, the trial court improperly charged the jury in violation of his right to due process under article first, § 8, of our state constitution[4] and (2) the court improperly instructed the jury on the state's burden of proof beyond a reasonable doubt. We affirm the judgment of the trial court.

The relevant facts are as follows. On December 18, 2000, the victim was in his room at the Madison Motel in East Hartford. At approximately 11 p.m., he answered a knock on his door. He opened the door slightly, and a man later identified as the defendant asked if "Bob lived here." Answering no, the victim opened the door and pointed to the door number. As he did so, he saw the defendant's hand move and felt a hard object strike his head. The victim was unsure whether the defendant had struck him with a knife, a hand or another object. The victim began to bleed profusely from a scalp wound, which eventually left a visible scar.

As the victim staggered backward, the defendant entered the room, closed the door and ordered him to "give me what you've got." The victim saw what he perceived to be the end of a folding knife in the defen-

[2] General Statutes § 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

[3] General Statutes (Rev. to 1999) § 53a-102 (a) provides: "A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein."

[4] Article first, § 8, of the constitution of Connecticut provides in relevant part: "No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

dant's right hand, although he never saw a blade. He based that conclusion on forty years of experience with knives, including ownership of a knife company. The victim retreated into his bedroom, pursued by the defendant. After the defendant again stated, "Give me what you've got," the victim gave him his money clip, which contained about $200. Seeing a telephone, the defendant warned the victim not to call the police and stated, "I have a gun in my pocket; I don't want to use it because it will burn a hole in my pocket." The defendant then left the room, taking the telephone with him. The victim called the police on his cellular telephone, and they arrived shortly thereafter. Officer Anthony Piacenta of the East Hartford police department observed both the victim bleeding from the head and blood on the carpeted floor.

On March 25, 2002, the defendant was charged by substitute information with burglary in the first degree, burglary in the second degree and robbery in the first degree. After a trial by jury, the defendant was convicted on all charges and sentenced to eighteen years imprisonment, execution suspended after eleven years, and five years probation. At sentencing, the defendant acknowledged that he had committed the charged offenses. This appeal followed.

I

The defendant first claims that as there was insufficient evidence in the record to support his conviction, the court improperly charged the jury in violation of his right to due process under article first, § 8, of our state constitution. The defendant failed to preserve his claim and now requests review under State v. Golding, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[5] We review

[5] Under Golding, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived

the claim under *Golding* because it is of constitutional magnitude and the record is adequate for review. As the defendant acknowledges, whether the evidence supporting the conviction was sufficient is a threshold issue to the resolution of his state constitutional claim. We must therefore consider first that threshold issue.

The standard of review for a sufficiency of the evidence claim employs a two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Niemeyer*, 258 Conn. 510, 517, 782 A.2d 658 (2001).

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense[s], each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Newsome*, 238 Conn. 588, 617, 682 A.2d 972 (1996). "[I]n determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . [A]n inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference." (Internal quotation marks

the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40. The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review. *State* v. *Jordan*, 64 Conn. App. 143, 150, 781 A.2d 310 (2001).

omitted.) *State* v. *Niemeyer*, supra, 258 Conn. 519. Moreover, "[i]n evaluating evidence that could yield contrary inferences, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence." *State* v. *DeJesus*, 236 Conn. 189, 195, 672 A.2d 488 (1996).

Finally, we must remember that it is the jurors who are the arbiters of fact. "[W]e do not sit as the seventh juror when we review the sufficiency of the evidence . . . rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict of guilt beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Cansler*, 54 Conn. App. 819, 838, 738 A.2d 1095 (1999).

### A

The defendant first claims that there was insufficient evidence in the record to support the jury's verdict that he was guilty of robbery in the first degree in violation of § 53a-134 (a) (3).[6] We disagree.

Section 53a-134 (a) (3) requires the use or the threatened use of a dangerous instrument. A dangerous instrument as defined in General Statutes § 53a-3 (7) is "any instrument, article or substance which, under the circumstances in which it is used . . . or threatened to be used, is capable of causing death or serious physical injury . . . ." We must therefore determine whether, under the facts of this case, there is a reasonable view of the evidence that supports the jury's finding that the defendant used or threatened the use of such an instrument.

---

[6] The defendant concedes that sufficient evidence existed to sustain a conviction under subdivision (4) of § 53a-134 (a).

The following evidence was before the jury. On December 18, 2000, the victim, answering a knock on his door, was struck violently over the head by the defendant. The skin of the victim's scalp was broken, and there was immediate and profuse bleeding. The defendant then entered the victim's room and closed the door, leaving the victim no means of escape. Facing his attacker, the victim saw what he perceived to be the end of a folding knife in the defendant's right hand.

From that evidence, viewed in the light most favorable to sustaining the verdict, the jury reasonably could have inferred that a dangerous instrument, whether the end of a folding knife or some other object,[7] was used

---

[7] The defendant emphasizes that the victim at trial could not conclusively say whether it was the end of a folding knife or the defendant's hand that struck the victim and insists that a fist is not a dangerous instrument. Cf. *State* v. *McColl*, 74 Conn. App. 545, 553–54, 813 A.2d 107 (defendant contends "dangerous instrument, as defined by General Statutes § 53a-3 (7), cannot include a body part . . . . [W]e conclude that an ordinary object may be a dangerous instrument. Therefore, [e]ach case must be individually examined to determine whether, under the circumstances in which the object is used or threatened to be used, it has the potential for causing serious physical injury. . . . The question of whether in the given circumstances a particular object was used as a dangerous instrument is a question of fact for the jury" [citations omitted; internal quotation marks omitted]), cert. denied, 262 Conn. 953, 818 A.2d 782 (2003); *State* v. *Osman*, 21 Conn. App. 299, 306, 573 A.2d 743 (1990) (concept of dangerous instrument focuses on manner in which object used or attempted or threatened to be used and its capabilities under those circumstances), rev'd on other grounds, 218 Conn. 432, 589 A.2d 1227 (1991); *Krasovich* v. *State*, 731 P.2d 598, 600 (Alaska App. 1987) (even bare hand can qualify as dangerous instrument when used to cause death or serious physical injury); *People* v. *Hayes*, 923 P.2d 221, 227 (Colo. App. 1995) (any object, including fist, can be deadly weapon if used or intended to be used in manner capable of producing death or serious bodily injury); *Thomas* v. *State*, 237 Ga. 690, 690–91, 229 S.E.2d 458 (1976) (jury may find use of fists to be deadly weapon in circumstances of particular case); see also *Johnson* v. *Commonwealth*, 926 S.W.2d 463, 465 (Ky. App. 1996) (inclusion of parts of human body as dangerous instruments depends on facts of case and capability of body part to cause death or serious physical injury); *State* v. *Born*, 280 Minn. 306, 308, 159 N.W.2d 283 (1968) (fists, when used to strike, and feet, when used to stomp another person, may or may not be dangerous weapons depending on circumstances of case); but see *Ex parte Cobb*, 703 So. 2d 871, 875 (Ala. 1996) (use of fists cannot constitute

in the attack. At the moment of the attack, the victim was facing the defendant. The victim saw the defendant's hand move and was then struck on the left side of the head. The location of the injury, when combined with the victim's testimony that the defendant was holding in his right hand an instrument resembling the end of a knife, reinforces the inference that the defendant hit the victim in the head with the instrument in his hand. For that reason, we conclude that there was sufficient evidence for the jury to find that the defendant used a dangerous instrument in the course of committing the robbery.

Furthermore, we conclude that there is a reasonable view of the evidence that supports the jury's finding that the defendant threatened the use of a dangerous instrument. Although there is no definition of the word "threaten" in our statutes, General Statutes § 1-1 (a) provides that the commonly approved usage of the language should control. *State* v. *Newton,* 8 Conn. App. 528, 541, 513 A.2d 1261 (1986). To threaten is "to charge under pain of punishment." Webster's Third New International Dictionary. Similarly, a threat is "[a] person or thing that might well cause harm." Black's Law Dictionary (7th Ed. 1999).

We have concluded that the jury reasonably could have inferred that the defendant used a knife or other object to strike the victim on the head. After striking the victim, the defendant entered the room and closed

---

use of dangerous instrument); *Commonwealth* v. *Davis,* 10 Mass. App. 190, 193, 406 N.E.2d 417 (1980) (human teeth, other parts of human body should be removed from consideration as dangerous weapons, even on case-by-case basis); *People* v. *VanDiver,* 80 Mich. App. 352, 357, 263 N.W.2d 370 (1977) (if court were to rule bare hands could be dangerous weapon, it would lead to anomalous results, for practically every assault also would be capable of prosecution as assault with dangerous weapon); *People* v. *Owusu,* 93 N.Y.2d 398, 712 N.E.2d 1228, 690 N.Y.S.2d 863 (1999) (body part does not constitute instrument under criminal statute); see generally annot., 8 A.L.R.4th 1268 (1981).

the door, leaving the victim no means of escape. With an object resembling the end of a folding knife in his hand, the defendant repeatedly ordered the victim to "give me what you've got."

"Jurors do not live in a fishbowl." *State* v. *Torrence,* 37 Conn. App. 482, 486, 657 A.2d 654 (1995). "In considering the evidence . . . [j]uries are not required to leave common sense at the courtroom door . . . ." (Internal quotation marks omitted.) *State* v. *Sparks,* 39 Conn. App. 502, 517, 664 A.2d 1185 (1995). A threat need not be explicitly uttered. *State* v. *Torrence,* supra, 486; *State* v. *Littles,* 31 Conn. App. 47, 54, 623 A.2d 500, cert. denied, 227 Conn. 902, 630 A.2d 72 (1993). Because the defendant had once inflicted severe punishment in the form of a blow to the victim's head, the jury had evidence from which it could infer that the defendant's subsequent orders to "give me what you've got" were made under pain of punishment. We conclude that the cumulative effect of the evidence, including reasonable inferences drawn therefrom, viewed in the light most favorable to sustaining the verdict, was sufficient to justify the jury's verdict that the defendant was guilty of robbery in the first degree in violation of § 53a-134 (a) (3).

B

The defendant next claims that there was insufficient evidence in the record to support the jury's verdict that he was guilty of burglary in the first degree in violation of § 53a-101 (a) (2) and burglary in the second degree in violation of § 53a-102 (a). Specifically, the defendant argues that there was no evidence to support a finding that the defendant intended to commit the crime of threatening while in the dwelling, as was alleged in the information.[8] Because we have concluded that the jury's

---

[8] The defendant concedes that sufficient evidence existed to support the conclusion that he entered the victim's room at night with the intent to commit both robbery and larceny.

finding that the defendant threatened the victim was supported by ample evidence, those claims, too, must fail.

### C

Because we conclude that sufficient evidence existed to support the defendant's conviction, his claim fails to satisfy the third prong of *Golding*.[9] Accordingly, we do not reach the merits of the defendant's state constitutional claim.

### II

The defendant's final claim is that the court improperly instructed the jury on the state's burden of proof beyond a reasonable doubt. The defendant acknowledges that his claim is controlled by our Supreme Court's precedent, but raises it to preserve it for future review. The state argues, and the defendant concurs, that the instructions provided in this case have been held not to constitute reversible error.[10] In light of that precedent, we conclude that the court's instructions were proper.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] In *Griffin* v. *United States*, 502 U.S. 46, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991), the United States Supreme Court held that "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." (Internal quotation marks omitted.) Id., 56–57. The defendant asks us to hold that in such situations, the additional protections of article first, § 8, of our state constitution require the evidence to be sufficient for each act so charged. Because we conclude that the evidence in this case was sufficient as to all charges, the defendant has not met his burden of establishing that the claimed constitutional violation clearly exists.

[10] See *State* v. *Reynolds*, 264 Conn. 1, 106–107, 836 A.2d 224 (2003); *State* v. *Whipper*, 258 Conn. 229, 293–98, 780 A.2d 53 (2001); *State* v. *Montgomery*, 254 Conn. 694, 729–31, 759 A.2d 995 (2000); *State* v. *Griffin*, 253 Conn. 195, 203–10, 749 A.2d 1192 (2000); *State* v. *Hines*, 243 Conn. 796, 816–20, 709 A.2d 522 (1998).