STATE OF CONNECTICUT *v.* ANDRES TORRES
(AC 23744)

Dranginis, DiPentima and Stoughton, Js.

Argued February 26—officially released May 11, 2004

*William B. Westcott*, special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Eva B. Lenczewski*, senior assistant state's attorney, for the appellee (state).

*Opinion*

STOUGHTON, J. The defendant, Andres Torres, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3). On appeal, the defendant claims that (1) the evidence was insufficient to support his conviction and (2) the court improperly instructed the jury. We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the morning of November 6, 2001, the victim, Vijaykumar Patel, the sole owner and operator of S and J Liquors in Waterbury, was selling lottery tickets to one of his regular patrons. The customer often purchased a large quantity of tickets, and it took the victim approximately fifteen to twenty minutes to process the order. During that time, the defendant, whom the victim recognized as being from the neighborhood, had entered the store and asked to purchase one lottery ticket. The victim sold the defendant the fifty cent ticket and then returned to completing his regular customer's order. About fifteen minutes later, the victim's regular customer left the store, and the victim started to stock the shelves.

The defendant reentered the store wearing a mask and brandishing a knife. The victim described the knife as having a blade that was approximately six inches

long. The defendant told the victim to "give him the money." The victim immediately fled from behind the counter and headed toward the exit. As he was exiting his store, the defendant asked the victim how to open the cash register. The victim instructed him to press the N/S (no sale) button and told the defendant that there was no money in the lottery drawer. After taking the money from the cash register, the defendant left the store. Additional facts will be set forth as necessary.

I

The defendant first claims that the evidence was insufficient to support his conviction of robbery in the first degree. Specifically, he argues that the evidence did not establish that (1) the knife was a dangerous instrument and (2) that he had used or threatened the use of a dangerous instrument. We are not persuaded.

The defendant concedes that those arguments were not preserved at trial and requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 239, 567 A.2d 823 (1989).[1] "[A]ny defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*. Accordingly, we conclude that no practical reason exists to engage in a *Golding* analysis of a sufficiency of the evidence claim and, thus, review the challenge as we do any other properly preserved claim." (Internal quotation marks omitted.) *State* v. *Jeffreys*, 78 Conn. App. 659, 677, 828 A.2d 659, cert. denied, 266 Conn. 913, 833 A.2d 465 (2003).

"In reviewing [a] sufficiency [of evidence] claim, we apply a two part test. First, we construct the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so con-

---

[1] The defendant did not make a motion for a judgment of acquittal at any time. Furthermore, the defendant's strategy at trial focused primarily on the issue of identity.

strued and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . .

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . We ask . . . whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Leon-Zazueta*, 80 Conn. App. 678, 681, 836 A.2d 1273 (2003), cert. denied, 268 Conn. 901, 845 A.2d 405 (2004).

Furthermore, we are mindful that "[w]e do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility. . . . The scope of our factual inquiry on appeal is limited. This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.)

*State* v. *Nicholson*, 71 Conn. App. 585, 590, 803 A.2d 391, cert. denied, 261 Conn. 941, 808 A.2d 1134 (2002).

It will be helpful to identify the parameters of the defendant's appeal. General Statutes § 53a-134 (a) provides in relevant part that "[a] person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he . . . (3) uses or threatens the use of a dangerous instrument . . . ." The defendant has challenged only the element of the use or threatened use of a dangerous instrument. With the foregoing principles in mind, we now address each of the defendant's claims.

A

The defendant's first argument is that there was insufficient evidence that the knife he possessed was a dangerous instrument. Specifically, he claims that the evidence regarding the knife was sparse, and, as a result, the jury could not find that the knife used in the robbery was a dangerous instrument.

During the trial, the victim testified that he observed the defendant enter the store wearing a mask and carrying a knife in his right hand. The defendant held the knife away from his body and instructed the victim to "give him the money." The victim stated that the blade of the knife was the length of his hand, approximately six inches. The victim also admitted that the defendant did not wave or point the knife at him, but the victim then demonstrated to the jury, both during his direct examination and cross-examination, the manner in which the defendant displayed the knife during the robbery.

This court, in *State* v. *McColl*, 74 Conn. App. 545, 813 A.2d 107, cert. denied, 262 Conn. 953, 818 A.2d 782 (2003), recently stated that "an ordinary object may be

a dangerous instrument. Therefore, [e]ach case must be individually examined to determine whether, under the circumstances in which the object is used or threatened to be used, it has the potential for causing serious physical injury. . . . The question of whether in the given circumstances a particular object was used as a dangerous instrument is a question of fact for the jury." (Citation omitted; internal quotation marks omitted.) Id., 554.

General Statutes § 53a-3 (7) defines a "dangerous instrument" as "any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ." Section 53a-3 (4) provides in relevant part that " '[s]erious physical injury' means physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ."

The victim testified that the blade of the knife was approximately six inches long. A knife is defined as "[a] *cutting instrument consisting of a sharp blade* with a handle . . . ." (Emphasis added.) American Heritage Dictionary (2d College Ed. 1985) p. 704. "The jury is entitled to draw reasonable inferences from the evidence before it and, in performing its function, the jury brings to bear its common sense and experience of the affairs of life." *State* v. *Koslik*, 80 Conn. App. 746, 756, 837 A.2d 813, cert. denied, 268 Conn. 908, 845 A.2d 413 (2004).

In *State* v. *Dumas*, 54 Conn. App. 780, 785, 739 A.2d 1251, cert. denied, 252 Conn. 903, 743 A.2d 616 (1999), we concluded that in a trial to the court, sufficient evidence existed to support a conviction for robbery in the first degree when the victim stated that the blade of the knife was five or six inches in length. Id., 785–87.

Similarly, we conclude that in the present case, it was reasonable for the jury, relying on its common sense and the evidence adduced at trial, to find that a knife with a six inch blade was capable of causing death or serious physical injury.

The defendant relies on *State* v. *Osman*, 21 Conn. App. 299, 573 A.2d 743 (1990), rev'd on other grounds, 218 Conn. 432, 589 A.2d 1227 (1991). In *Osman*, two robbers entered a store, with one carrying a tire iron while the defendant possessed an unloaded pellet pistol. Id., 301. The defendant appealed from his conviction of robbery in the first degree, claiming that there was insufficient evidence. Id. The defendant had threatened to shoot the clerk, but had not threatened to use the pellet pistol as a bludgeon. Id., 307. The trial court denied his motion for a judgment of acquittal. Id., 305.

On appeal, this court disagreed and concluded that the defendant's conviction could stand only if an unloaded pellet pistol was a dangerous instrument under § 53a-134 (a) (3). Under that statute, "the state had the burden of showing that, under the circumstances in which the pellet pistol was used, it was actually capable of causing death or serious physical injury." Id., 307. We concluded that there was no evidence that the defendant had used or threatened to use the unloaded gun as a bludgeon and that although he had threatened to shoot the clerk, the gun was not capable of causing death or serious physical injury in that manner. Id., 306–307. Thus, "[u]nder these circumstances, an unloaded pellet pistol is not a dangerous instrument." Id., 307.

*Osman* is distinguishable from the facts of the present case and, therefore, the defendant's reliance is misplaced. In *Osman*, the unloaded pellet gun was not actually capable of causing death or serious physical injury under the circumstances in which it was used.

Here, the defendant used a knife, an instrument that was capable of causing death or serious physical injury, particularly in the manner in which it was used.

Construing the evidence and the reasonable inferences drawn therefrom in the light most favorable to sustaining the verdict, we conclude that the jury reasonably was able to find that a knife with a six inch blade was capable of causing death or serious physical injury. Accordingly, the defendant's claim must fail.

B

The defendant next argues that there was insufficient evidence that he had used or threatened to use the knife during the incident. Specifically, the defendant claims that the facts fail to demonstrate that he ever threatened the victim with physical force.[2]

We have stated that "[a]lthough there is no definition of the word 'threaten' in our statutes, General Statutes § 1-1 (a) provides that the commonly approved usage of the language should control. . . . To threaten is 'to charge under pain of punishment.' Webster's Third New International Dictionary. Similarly, a threat is '[a] person or thing that might well cause harm. Black's Law Dictionary (7th Ed. 1999).' " (Citation omitted.) *State* v. *Glasper*, 81 Conn. App. 367, 374, 840 A.2d 48, cert. denied, 268 Conn. 913, 845 A.2d 415 (2004).

In the present case, there was evidence that the defendant had entered the victim's store wearing a mask and armed with a knife. The defendant demanded that the victim instruct him how to open the cash register, give him the money and tell him whether there was additional money in the lottery drawer. The victim also demonstrated to the jury the manner in which the defen-

---

[2] It is undisputed that the defendant did not actually physically injure the victim during the robbery.

dant carried the knife during the commission of the robbery.[3]

"Jurors do not live in a fishbowl. . . . In considering the evidence . . . [j]uries are not required to leave common sense at the courtroom door . . . . A threat need not be explicitly uttered." (Citations omitted; internal quotation marks omitted.) Id., 375. In conclusion, we believe that the cumulative effect of the evidence, along with the reasonable inferences drawn therefrom, was sufficient to support the defendant's conviction.

## II

The defendant next claims that the court improperly instructed the jury. Specifically, he argues that the court improperly (1) instructed the jury on a theory of robbery that was not alleged by the state and (2) diluted the state's burden of proof, thereby depriving him of his constitutional right to a fair trial. We disagree.

At the outset, we note that the defendant concedes that those claims were not preserved at trial and requests *Golding* review. The four prongs of *Golding* are well known, and we will review the claims because the record is adequate for review and the defendant's claims regarding the alleged improper jury instruction are of constitutional magnitude.

Before discussing the defendant's claims, we set forth our standard of review. "It is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether

[3] See footnote 2.

the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Austin*, 244 Conn. 226, 235, 710 A.2d 732 (1998). We now discuss each of the defendant's claims in turn.

A

The defendant first argues that the court improperly instructed the jury on a theory of robbery that was not alleged by the state. General Statutes § 53a-133 provides that "[a] person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

The substitute information[4] and the two excerpts from the jury charge[5] described the theory of robbery set forth in § 53a-133 (3).

---

[4] The state's substitute information stated in relevant part that the defendant, "in the course of committing a larceny . . . used and threatened the immediate use of physical force upon [the victim] by means of a dangerous instrument, to wit: a knife, for the purpose of compelling [the victim] to deliver up a sum of U.S. currency."

[5] The court read the following charge to the jury: "General Statutes § 53a-133 of the Penal Code defines robbery as follows: A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of compelling the owner of such property, in this case, [the victim], to deliver up the property. The gist of the crime of robbery is the act of committing a larceny by force or the threat of force.

＊ ＊ ＊

"Next, you must determine whether the larceny was accomplished by physical force. Physical force means the external—means the external physical power of the person, which can be affected by hand or foot or another part of the defendant's body applied to the victim's body or applied by an implement. The gist of robbery then, is the commission of larceny by the use of physical force or threat of immediate use of physical force. Physical force may take many forms. If you find that no actual physical force was

Near the conclusion of its charge, the court stated: "To summarize, then, in order for you to convict the defendant under this count, the state must have proven beyond a reasonable doubt the following elements, that the defendant . . . committed a larceny . . . . *Two, that in the course of committing the larceny, he intentionally used physical force or threatened the immediate use of physical force on another person for the purpose of preventing or overcoming resistance to the taking of the property,* and, three, that in the course of committing the robbery or immediate flight therefrom, he used or threatened the use of a dangerous instrument, here, a knife." (Emphasis added.)

Essentially, the defendant contends that it was improper for the court, during its summary of the jury charge, to mention the theory of robbery set forth in § 53a-133 (1) when it was never alleged by the state. He argues that because there was insufficient evidence that he compelled the victim to deliver up the money, it was an error of constitutional magnitude to charge the jury on the alternate robbery theory.

In part I, we concluded that sufficient evidence existed to support the defendant's conviction and that he had compelled the victim to deliver up the money from the cash register. Our Supreme Court has stated that "[i]n [*State* v. *Chapman,* 229 Conn. 529, 539–44, 643 A.2d 1213 (1994) (en banc)], we relied on the decision of the United States Supreme Court in *Griffin* v. *United States,* 502 U.S. 46, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991), and *concluded that a defendant's constitutional*

inflicted upon the person by the defendant, but the victim was threatened with physical force, you must also find, to return a verdict of guilty, that the defendant threatened the victim with physical force.

"Now, if you find that physical force was used or its use was immediately threatened against a person, in the course of committing a larceny, you must then determine whether such physical force was used or threatened for the purpose of compelling [the victim] to deliver up property."

*right to due process of law is not violated when the trial court charges the jury on a factually unsupported basis of criminal liability provided that, in addition to that instruction, the trial court instructs the jury on a factually supported basis.*" (Emphasis added.) *State* v. *Dyson,* 238 Conn. 784, 795, 680 A.2d 1306 (1996); see also *State* v. *Aponte,* 63 Conn. App. 82, 91, 774 A.2d 1035 (2001), aff'd, 259 Conn. 512, 790 A.2d 457 (2002); *State* v. *Sanko,* 62 Conn. App. 34, 39–40, 771 A.2d 149, cert. denied, 256 Conn. 905, 772 A.2d 599 (2001).

The defendant's claim must fail because the court instructed the jury on a theory that was supported by the evidence, and therefore the rule set forth in *Chapman* and its progeny applies. Accordingly, the defendant's claim has not satisfied the third prong of *Golding* that a constitutional violation clearly existed and that the defendant clearly was deprived of a fair trial.

Additionally, this court previously has rejected that argument. "Both subdivisions (1) and (2) of General Statutes § 53a-133 refer to the defendant's purpose in using or threatening force. Subdivision (1) refers to his purpose of using or threatening force to prevent or overcome resistance to the taking of the property, or to its retention immediately after the taking. Subdivision (2) refers to his purpose of using or threatening force to compel the owner to deliver up property or otherwise to aid in the larceny. These two states of mind are hardly conceptually distinct from each other . . . . Both states of mind [in the case at issue] involved an intent to force or intimidate the victims to yield their property so as to permit its taking or retention by the defendant." *State* v. *Horne,* 19 Conn. App. 111, 136–37, 562 A.2d 43, 562 A.2d 43 (1989), rev'd on other grounds, 215 Conn. 538, 577 A.2d 694 (1990); see also *State* v. *McColl,* supra, 74 Conn. App. 569–70.

## B

Last, the defendant argues that the court improperly diluted the state's burden of proof. Specifically, he claims that two aspects of the charge constituted a constitutional violation. We are not persuaded.

Near the beginning of its charge, the court discussed the state's burden of proof: "Now, what does that mean, beyond a reasonable doubt? The phrase, beyond a reasonable doubt, has no technical or unusual meaning. The meaning of reasonable doubt can be arrived at by emphasizing the word reasonable. It is not a surmise, a guess or mere conjecture. It is such a doubt as, in serious affairs that concern you, you would heed. That is, such a doubt as would cause reasonable men and women to hesitate to act upon in matters of importance. It is not hesitation springing from any feelings of pity or sympathy for the accused or any other persons who might be affected by your decision. It is, in other words, a real doubt, an honest doubt, a doubt that has its foundation in the evidence or lack of evidence. *It is a doubt that is honestly entertained and is reasonable in light of the evidence after a fair comparison and careful examination of the entire evidence.*" (Emphasis added.)

At the conclusion of the charge, the court instructed the jury that "[t]he defendant justly relies upon you to consider carefully all of the evidence and to find him not guilty if the facts and the law require such a verdict. *The state, as well, does not want the conviction of an innocent person. The state is as much concerned in having an innocent person acquitted as in having a guilty person convicted.*" (Emphasis added.)

The defendant claims that the combination of the court's instructions that "[t]he state, as well, does not want the conviction of an innocent person," and that reasonable doubt "is a doubt that is honestly enter-

tained and is reasonable in light of the evidence after a fair comparison and careful examination of the entire evidence" constituted the improper dilution of the state's burden of proof.

Both this court and our Supreme Court have been critical of, and have cautioned the trial courts against, the use of the instruction that "[t]he state is as much concerned in having an innocent person acquitted as in having a guilty person convicted." (Internal quotation marks omitted.) *State* v. *Wilson*, 71 Conn. App. 110, 119, 800 A.2d 653, cert. denied, 262 Conn. 905, 810 A.2d 272 (2002); *State* v. *Abraham*, 64 Conn. App. 384, 407, 780 A.2d 223, cert. denied, 258 Conn. 917, 782 A.2d 1246 (2001); see also *State* v. *Watson*, 251 Conn. 220, 228 n.9, 740 A.2d 832 (1999); *State* v. *Delvalle*, 250 Conn. 466, 473 n.10, 736 A.2d 125 (1999); *State* v. *Schiappa*, 248 Conn. 132, 168, 728 A.2d 466 (en banc), cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999). Nevertheless, "Connecticut courts have found that wording very similar to the statement under attack in this case does not violate a defendant's constitutional rights and, thus, does not require reversal of a judgment of conviction." *State* v. *Wilson*, supra, 71 Conn. App. 118; see also *State* v. *Allen*, 28 Conn. App. 81, 84–85, 611 A.2d 886, cert. denied, 223 Conn. 920, 614 A.2d 826 (1992).

As to the defendant's challenge to the instruction that a reasonable doubt is one that "is honestly entertained and is reasonable in light of the evidence after a fair comparison and careful examination of the entire evidence," we simply note that the appellate courts of this state, on several occasions, have considered and rejected his argument. See *State* v. *Whipper*, 258 Conn. 229, 297, 780 A.2d 53 (2001) (upholding instruction on "definition of reasonable doubt as a real doubt, an honest doubt . . . a doubt which in the serious affairs which concern you in everyday life you would pay heed

and attention to does not dilute the state's burden of proof when such definitions are viewed in the context of an entire charge" [internal quotation marks omitted]); *State* v. *Anderson*, 65 Conn. App. 672, 686, 783 A.2d 517 (2001) (our appellate courts "consistently have upheld" "type of language" in trial "court's instruction that [reasonable doubt] is a doubt that is honestly entertained and is reasonable in light of the evidence after a fair comparison and careful examination of the entire evidence presented in the case" [internal quotation marks omitted]); see also *State* v. *Davis*, 76 Conn. App. 653, 676–78, 820 A.2d 1122 (2003); *State* v. *Mazzeo*, 74 Conn. App. 430, 441–42, 811 A.2d 775, cert. denied, 263 Conn. 910, 821 A.2d 767 (2003); *State* v. *Arceniega*, 73 Conn. App. 288, 294–97, 807 A.2d 1028 (2002); *State* v. *Henry*, 72 Conn. App. 640, 667–69, 805 A.2d 823, cert. denied, 262 Conn. 917, 811 A.2d 1293 (2002).

The language challenged by the defendant has been upheld consistently in Connecticut courts.[6] Moreover, we disagree with the defendant's contention that a combination of two challenged instructions becomes more than the sum of their individual parts and results in a dilution of the state's burden of proof. Instead, we have reviewed the charge in its entirety and conclude that it fairly presented the case to the jury under the established rules of law. Thus, we conclude that when it is read in its entirety, the court's jury charge presented the case to the jury in a manner such that no injustice would result. Accordingly, the defendant's claim must fail under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] We do not endorse the language used by the trial court that previously has been criticized by both this court and our Supreme Court. Nevertheless, consistent with prior decisions, such language does not deprive the defendant of his right to a fair trial.