STATE OF CONNECTICUT *v.* JAMAHL HURDLE
(AC 24230)

Flynn, McLachlan and Mihalakos, Js.

Argued May 4—officially released September 21, 2004

*Robert J. McKay*, special public defender, for the appellant (defendant).

*Melissa L. Streeto*, deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *David A. Gulick*, assistant state's attorney, for the appellee (state).

### Opinion

MIHALAKOS, J. The defendant, Jamahl Hurdle, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3) and assault in the second degree in violation of General Statutes § 53a-60 (a) (2). On appeal, the defendant claims that the trial court improperly (1) exercised its discretion in denying his request for a thirty day continuance to prepare for trial, (2) precluded him from presenting evidence in support of his self-defense claim that he had cancer of the leg and (3) denied his motions for a judgment of acquittal. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. From late on August 14, into the early morning hours of August 15, 2002, the victim, William Putnoki, attended a party at the third floor apartment of his girlfriend, Trish Andrews, at 17 Willard Street in Waterbury. In addition to the victim and Andrews, the other guests at the party were Jessica Donovan, Anthony Cooper and the defendant.

The victim fell asleep on Andrews' couch around midnight and awoke at 1 a.m. or 2 a.m. to find the defendant staring at him. The victim felt uncomfortable and stood up to leave the apartment. The defendant

asked the victim for a ride down the street. The victim initially refused and began to walk down the stairs toward the street. The defendant followed him, using a cane for assistance.

The victim still had no intention of giving the defendant a ride as he walked to his truck. The defendant, however, got into the victim's passenger seat without the victim's permission and again asked for a ride. At that point, the victim agreed to give the defendant a ride. The defendant gave the victim directions, but they ultimately returned to Andrews' apartment. Frustrated, the victim inquired of the defendant the purpose of the ride. In response, the defendant struck the victim on the side of the head with his cane and stole the victim's wallet from his front pocket. The defendant threatened that he would kill the victim if the victim ever returned to Andrews' apartment.

The defendant then exited the truck, followed by the victim. The victim confronted the defendant behind the vehicle, demanding that the defendant return his wallet. The defendant again struck the victim on both sides of the head with the cane. The defendant then brandished a knife and began swinging the knife at the victim. After the defendant marked the victim's neck on his first swing, the victim raised his arms to protect himself. As a result, the victim suffered cuts on his left arm, hand and neck.

In an attempt to wrestle the knife away from the defendant, the victim was able to grab the defendant's arm. The victim held the defendant down to the ground. At that point, Donovan and Andrews exited the apartment and came down to the street to the defendant and the victim. Andrews shouted at the victim to let the defendant free, and he did so. The defendant then ran up the stairs to Andrews' apartment, followed by Donovan. Andrews saw that the victim was bleeding and took

him into the apartment where she tended to his wounds. She also retrieved the victim's wallet from the defendant. Sixty-five dollars was missing from the wallet.

Andrews drove the victim to the hospital, where he gave a statement to David Rovinetti, an officer in the Waterbury police department. The victim did not know the defendant's name at that point and was told by Andrews that the name of the individual who assaulted him was Anthony Cooper. Consequently, the victim named Cooper as a suspect. Andrews also told Rovinetti that Cooper was the perpetrator.

Cooper was arrested in connection with the robbery and assault of the victim. Cooper told the public defender assigned to his case that he was innocent and asked the public defender if it was possible to hold a police lineup to prove his innocence. Subsequently, on September 9, 2002, John Maia, an inspector with the office of the state's attorney in Waterbury, asked the victim to view two photographic arrays. The second array contained a photograph of the defendant. The victim identified the defendant's photograph as being of the individual who had robbed and assaulted him. The victim gave the police a second statement in which he implicated the defendant, rather than Cooper, as the perpetrator.

At trial, Andrews testified that she lied to the police and the victim when she reported that it was Cooper, rather than the defendant, who had committed the robbery and assault. She testified that she intentionally misled the police and the victim because she was afraid of the defendant as a result of his violent behavior toward her in the past. In addition, Cooper testified that the defendant asked him to tell the police that the victim had started an argument with the defendant. In his second statement to the police, the victim indicated

that he had initially identified Cooper as a suspect due to the information given to him by Andrews.

The defendant was arrested and charged with robbery in the first degree in violation of § 53a-134 (a) (3) and assault in the second degree in violation of § 53a-60 (a) (2). The jury found the defendant guilty of both charges. The court sentenced the defendant to twenty years incarceration with a five year mandatory minimum term of imprisonment. This appeal followed.

I

The defendant first claims that the court abused its discretion in granting him only a limited continuance to prepare for trial. Specifically, the defendant claims that the court constructively denied his motion for a continuance of thirty days when it allowed him only an additional seven days to prepare for trial. The defendant claims that this denial of a reasonable time to prepare for trial violated his rights to due process and to a fair trial under both the federal and state constitutions.[1] We disagree.

The following additional facts are necessary for our resolution of that claim. On November 4, 2002, the first day of jury selection, defense counsel filed a motion for a continuance, requesting an additional thirty days to prepare for trial. Defense counsel stated that he needed the additional time because he had been assigned to the defendant's case that same day.

---

[1] "Because the defendant has not briefed his claim separately under the Connecticut constitution, we limit our review to the United States constitution. We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . ." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 69 Conn. App. 649, 656 n.6, 796 A.2d 1225, cert. denied, 260 Conn. 937, 802 A.2d 91 (2002).

The court granted a continuance of seven days, stating that jury selection would begin on November 4, 2002, and continue until November 6, 2002, if necessary, and that the trial would not begin until November 12, 2002. The court stated that it had "made a cursory examination of the warrant involved with the robbery case, and [believed] that counsel [could] do an adequate investigation and prepare and be ready by next Tuesday, which would be November 12." The court also took into account the state's open file policy and the state's agreement to transfer any relevant medical records from the file of a separate criminal case against the defendant to the robbery file, saving the defendant from having to subpoena the records. In light of these factors, the court stated to defense counsel that "[y]ou'll have the time to discuss with your client, between now and next Tuesday, any possible defenses, strategies he may have in his case . . . ."

We first set forth the applicable standard of review. "We previously have recognized that [t]he determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. . . . A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . Our role as an appellate court is not to substitute our judgment for that of a trial court that has chosen one of many reasonable alternatives." (Internal quotation marks omitted.) *State* v. *Breton*, 264 Conn. 327, 356–57, 824 A.2d 778, cert. denied, 540 U.S. 1055, 124 S. Ct. 819, 157 L. Ed. 2d 708 (2003).

"To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer

must be found in the circumstances present in every case, *particularly in the reasons presented to the trial judge at the time the request is denied.*" (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Hamilton,* 228 Conn. 234, 240, 636 A.2d 760 (1994).

The defendant does not offer specific reasons explaining why the court's decision was arbitrary or unreasonable. Furthermore, while defense counsel had just been appointed to the defendant's case and more latitude could have been extended to him under the circumstances of this case, the defendant has failed to show that the court's decision caused him to suffer actual prejudice. "In the event that the trial court acted unreasonably in denying a continuance, the reviewing court must also engage in harmless error analysis." (Internal quotation marks omitted.) *State* v. *Coney,* 266 Conn. 787, 802, 835 A.2d 977 (2003).

"For purposes of assessing actual prejudice, the focus is on the adequacy of the defendant's legal representation subsequent to the trial court's ruling, as distinguished from its likely adequacy as determined by the trial court at the time of its ruling on the motion for continuance." *State* v. *Hamilton,* supra, 228 Conn. 241. The defendant has failed to demonstrate that his defense was compromised by the court's decision to allow a seven day continuance rather than a thirty day continuance. In fact, the defendant does not even claim that he was prejudiced by the court's decision, nor does he articulate how his defense would have benefited from the granting of a thirty day continuance. See *State* v. *Delgado,* 261 Conn. 708, 716, 805 A.2d 705 (2002).

On the basis of the foregoing analysis, we conclude that the court did not abuse its discretion by granting the defendant a continuance of seven days rather than the thirty days he originally requested.

## II

The defendant next claims that the court abused its discretion by granting the state's motion in limine and precluding him from presenting evidence that he was suffering from cancer at the time of the alleged robbery and assault of the victim. Specifically, he argues that the fact that he was diagnosed with cancer was relevant to his self-defense claim because it was demonstrative of his state of mind on the day in question. The defendant contends that the court violated his constitutional rights to due process and to a fair trial under the state and federal constitutions by precluding that evidence.[2] We disagree.

The following additional facts are relevant to that claim. The defendant argued at trial that he stabbed the victim in self-defense after the victim attacked him in his apartment. In support of his defense, the defendant sought to present evidence that he suffered from a cancerous tumor in his leg at the time the charged offenses were committed. The state filed a motion in limine on November 5, 2002, seeking the exclusion of any evidence that the defendant was suffering from cancer on the night in question. The state argued that the evidence was irrelevant and prejudicial in that it would arouse sympathy in the minds of the jurors. In response, the defendant contended that his medical condition was relevant to his state of mind at the time of the attack and, specifically, to "his ability to deal with an attack . . . ."

The court granted the state's motion "in terms of a blanket statement or testimony as to the fact that he has cancer." The court stated that it would allow testimony regarding the defendant's diagnoses of cancer if the defendant could "apply it to a defense," emphasizing

---

[2] We decline to review the defendant's state constitutional claim for the reasons set forth in footnote 1.

that "we are just not going to get into blanket testimony that he's a cancer patient and weak and suffering."

At trial, defense counsel asked the defendant if he recalled "what they found at the hospital." The state objected, prompting the court to excuse the jury. The court barred the defendant from testifying that he had cancer, but permitted him to testify that he had a lesion or tumor. The court reasoned that the defendant did not know with any certainty at the time of the attack that he had cancer. The court also pointed out that a physician was not scheduled to testify as to the defendant's condition or ability to move around at the time of the incident.

We first set forth the relevant standard of review. "Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [defendant] of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Young*, 81 Conn. App. 710, 714, 841 A.2d 737, cert. denied, 269 Conn. 901, 852 A.2d 733 (2004).

The defendant argues that evidence of his cancer diagnosis was relevant to his state of mind at the time of the attack. "As a general principle, evidence is relevant if it has a tendency to establish the existence of a material fact. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable." (Internal quotation

marks omitted.) *State* v. *Harrison*, 32 Conn. App. 687, 702, 631 A.2d 324, cert. denied, 227 Conn. 932, 632 A.2d 708 (1993).

In this case, evidence of the defendant's cancer diagnosis was both irrelevant to his claim of self-defense and highly prejudicial. The court's finding that the defendant was unaware at the time of the attack that he was suffering from cancer supports the court's conclusion that his prognosis had no bearing on his state of mind. See id., 702 (evidence of defendant's medical condition and life expectancy irrelevant to state of mind, specifically need to use deadly physical force). Moreover, the court acknowledged the potential prejudicial effect of such testimony when it stated to counsel that "[w]e are just not going to get into blanket testimony that he's a cancer patient and weak and suffering." As the court's decision was based on such sound reasoning, we cannot conclude that the court abused its discretion by not allowing the defendant to testify that he suffers from cancer.

Furthermore, even if the court abused its discretion by granting in part the state's motion in limine, the defendant has failed to show any harm. "[T]o establish the harmfulness of a trial court ruling, the defendant must show that it is more probable than not that the improper action affected the result. . . . The question is whether the trial court's error was so prejudicial as to deprive the defendant of a fair trial, or, stated another way, was the court's ruling, though erroneous, likely to affect the result?" (Internal quotation marks omitted.) *State* v. *Colon*, 70 Conn. App. 707, 718–19, 799 A.2d 317, cert. denied, 261 Conn. 933, 806 A.2d 1067 (2002); see also *State* v. *Shabazz*, 246 Conn. 746, 758–59, 719 A.2d 440 (1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999).

In fact, the defendant does not contend that the outcome of his case would have been different if the court

had not granted in part the state's motion in limine. He argues only that the court abused its discretion in not allowing him to testify that he suffered from cancer of the leg. Moreover, the court did allow the defendant to testify in the presence of the jury that he suffered from a painful tumor in his leg, experienced difficulty moving around, and used crutches and a wheelchair. The defendant also was allowed to testify about his state of mind at the time of the incident when he stated that he was afraid of the victim because the victim was outside his apartment yelling at him and that he was scared while the victim allegedly was attacking him.

On the basis of the foregoing analysis, we conclude that the court's decision to grant the state's motion in limine, even if improper, was harmless because it was not likely to affect the result of the trial.

### III

The defendant's final two claims pertain to the court's denial of his motions for a judgment of acquittal of the charges of robbery in the first degree and assault in the second degree.[3] The defendant argues that the court's denial of those motions was improper because there was insufficient evidence to prove each element of the charges beyond a reasonable doubt. We disagree.

The defendant failed to preserve his claims and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). "[A]ny defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*. Accordingly, we conclude that no practical reason exists to engage in a *Golding* analysis of a sufficiency of the evidence claim and, thus, review the challenge as we do any other

[3] Although the defendant has briefed those claims separately as they relate to the charges of robbery in the first degree and assault in the second degree, we address them together.

properly preserved claim." (Internal quotation marks omitted.) *State* v. *Jeffreys*, 78 Conn. App. 659, 677, 828 A.2d 659, cert. denied, 266 Conn. 913, 833 A.2d 465 (2003).

"[T]he standard of appellate review of a denial of a motion for a judgment of acquittal [challenging the sufficiency of the evidence] has been settled by judicial decision. . . . [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *William B.*, 76 Conn. App. 730, 750, 822 A.2d 265, cert. denied, 264 Conn. 918, 828 A.2d 618 (2003). "It is well settled that in reviewing a defendant's challenge to a verdict based on insufficient evidence, we defer to the jury." (Internal quotation marks omitted.) *State* v. *Leon-Zazueta*, 80 Conn. App. 678, 684–85, 836 A.2d 1273 (2003), cert. denied, 268 Conn. 901, 845 A.2d 405 (2004).

A

The defendant first argues that there was insufficient evidence to convict him of robbery in the first degree because the state failed to prove that he used "physical force upon another person for the purpose of . . . overcoming resistance to the taking of the property . . . immediately after the taking," as mandated by General Statutes § 53a-133.[4] The defendant contends

---

[4] General Statutes § 53a-133 provides in relevant part: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking . . . ."

General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight

that the evidence does not demonstrate that he threatened the victim or that the victim resisted the taking of his wallet. The defendant also points out that the state did not request that the court take judicial notice of a cane or knife as a dangerous instrument.[5] We disagree with all of the defendant's arguments.

First, there is sufficient evidence to show that the victim resisted the taking of his wallet. Immediately following the taking, the victim exited his vehicle and confronted the defendant, demanding that the defendant return his wallet to him. In response, the defendant struck the victim on the head with the cane and began stabbing at the victim with a knife. Clearly, the defendant attacked the victim with the cane and knife in response to the victim's resistance and to suppress that resistance. See *State* v. *McColl*, 74 Conn. App. 545, 573, 813 A.2d 107 (use of force to make victim let defendant take property), cert. denied, 262 Conn. 953, 818 A.2d 782 (2003).

We next address the defendant's argument that the state never requested that the court take judicial notice of a cane or knife as dangerous instruments. It is, however, not necessary for the court to take judicial notice of those objects as dangerous instruments. This court has held that "an ordinary object may be a dangerous instrument. Therefore, [e]ach case must be individually examined to determine whether, under the circum-

therefrom, he . . . (3) uses or threatens the use of a dangerous instrument . . . ."

[5] General Statutes § 53a-3 (7) defines a dangerous instrument as "any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury, and includes a 'vehicle' as that term is defined in this section and includes a dog that has been commanded to attack, except a dog owned by a law enforcement agency of the state or any political subdivision thereof or of the federal government when such dog is in the performance of its duties under the direct supervision, care and control of an assigned law enforcement officer . . . ."

stances in which the object is used or threatened to be used, it has the potential for causing serious physical injury. . . . *The question of whether in the given circumstances a particular object was used as a dangerous instrument is a question of fact for the jury.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Torres*, 82 Conn. App. 823, 827–28, 847 A.2d 1022, cert. denied, 270 Conn. 909, 853 A.2d 525 (2004). "The jury is entitled to draw reasonable inferences from the evidence before it and, in performing its function, the jury brings to bear its common sense and experience of the affairs of life." *State* v. *Koslik*, 80 Conn. App. 746, 756, 837 A.2d 813, cert. denied, 268 Conn. 908, 845 A.2d 413 (2004). "[T]he facts and circumstances need show only that the general way in which the object was used could *potentially* have resulted in serious physical injury." (Emphasis in original; internal quotation marks omitted.) *State* v. *Ramos*, 70 Conn. App. 855, 862, 800 A.2d 631, cert. granted on other grounds, 261 Conn. 922, 806 A.2d 1063 (2002).

Indeed, a cane used to strike someone on the head reasonably could be considered a dangerous instrument. See id., 861 (hammer considered dangerous instrument when used to strike victim on head). Similarly, a knife used to stab at a victim, causing serious lacerations, is an instrument capable of causing death or serious physical injury. See *State* v. *Torres*, supra, 82 Conn. App. 830. Accordingly, under the circumstances of this case, we conclude that the jury reasonably could have found that both the cane and knife were dangerous objects and were used as such by the defendant.

Last, there is also sufficient evidence to show that the defendant used or threatened to use a dangerous instrument in the course of committing the robbery. "To threaten is to charge under pain of punishment. . . . Similarly, a threat is [a] person or thing that might

well cause harm." (Citation omitted; internal quotation marks omitted.) *State* v. *Glasper*, 81 Conn. App. 367, 374, 840 A.2d 48, cert. denied, 268 Conn. 913, 845 A.2d 415 (2004). "Jurors do not live in a fishbowl. . . . In considering the evidence . . . [j]uries are not required to leave common sense at the courtroom door . . . . A threat need not be explicitly uttered." (Internal quotation marks omitted.) *State* v. *Torres*, supra, 82 Conn. App. 831.

As previously recounted, there was evidence that the defendant struck the victim on the head with a cane before taking his wallet and threatening that he would kill the victim if the victim ever returned to the Willard Street apartment. The defendant again struck the victim on the head with the cane and began stabbing at the victim with a knife when the victim attempted to retrieve his wallet from the defendant. The jury could reasonably infer from such facts that the defendant used or threatened the use of a dangerous instrument during the robbery, especially after the defendant previously inflicted harm on the victim when he again struck the victim on the head with the cane and began stabbing the victim with the knife. See *State* v. *Glasper*, supra, 81 Conn. App. 375.

On the basis of the foregoing analysis, we conclude that there was sufficient evidence to support the defendant's conviction of robbery in the first degree. Accordingly, the court properly denied the defendant's motion for a judgment of acquittal.

B

Finally, the defendant claims that although the state presented sufficient evidence to support the conviction of assault in the second degree, the state failed to prove beyond a reasonable doubt that he was not acting in self-defense and, therefore, improperly denied his motion for a judgment of acquittal. We disagree.

The following additional facts are necessary for the resolution of that claim. The defendant testified at trial that while he was in his kitchen preparing a snack, he heard loud banging downstairs. Seconds later, he heard banging on his apartment door. The defendant, who used a wheelchair to ambulate, wheeled himself into the front room of the apartment when the door opened. The victim entered the defendant's apartment and confronted the defendant. The defendant cut the victim with the knife, which the defendant had been using in the kitchen, to ward off the victim's advances. During that time, the defendant and the victim were yelling at each other. The victim then knocked the defendant out of his wheelchair and dragged the defendant downstairs to the sidewalk, where he pinned the defendant to the ground. Shortly thereafter, Andrews approached the two men and told the victim to release the defendant.

"Under our Penal Code, self-defense . . . is a defense, rather than an affirmative defense. . . . Consequently, a defendant has no burden of persuasion for a claim of self-defense; he has only a burden of production. That is, he merely is required to introduce sufficient evidence to warrant presenting his claim of self-defense to the jury. . . . Once the defendant has done so, it becomes the state's burden to disprove the defense beyond a reasonable doubt. . . . As these principles indicate, therefore, only the state has a burden of persuasion regarding a self-defense claim: it must disprove the claim beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State v. Clark*, 264 Conn. 723, 730–31, 826 A.2d 128 (2003).

The defendant's claim on appeal depends solely on his testimony. The defendant, however, did not present any witnesses to corroborate his story or to contradict the testimony offered by the state's witnesses. On the contrary, Andrews' testimony supported the victim's version of events, and both Andrews and Cooper testi-

fied that the defendant asked that they lie to the police regarding the identity of the victim's assailant. Regardless, "[n]othing in our criminal jurisprudence mandates that a jury accept a defendant's version of events or the reasonable inferences that flow therefrom. The jury is free to juxtapose conflicting versions of events and to determine which is the more credible." *State* v. *Adams*, 225 Conn. 270, 278, 623 A.2d 42 (1993). Moreover, "[i]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence." (Internal quotation marks omitted.) Id., 281.

On the basis of the foregoing analysis, we conclude that there was sufficient evidence from which the jury could reasonably conclude beyond a reasonable doubt that the defendant was not acting in self-defense. Accordingly, the court properly denied the defendant's motion for a judgment of acquittal.

The judgment is affirmed.

In this opinion the other judges concurred.